314 So.2d 72

**DEPARTMENT OF INDUSTRIAL RELATIONS**

v.

**Alex M. McLEOD.**

**Civ. 510.**

Court of Civil Appeals of Alabama.

June 4, 1975.

Arthur J. Reid, Gen. Counsel, and Richard S. Brooks, Asst. Gen. Counsel, Alabama Dept. of Industrial Relations, Montgomery, for appellant.

George E. Trawick, Ozark, for appellee.

BRADLEY, Judge.

The appeal is from a judgment of the Circuit Court of Dale County holding that appellee-claimant was not disqualified from receiving unemployment compensation benefits, and that he did not voluntarily leave his employment without good cause.

The appellant, Department of Industrial Relations, had apparently determined that claimant was disqualified from receiving unemployment compensation benefits for that he had voluntarily left his employment without good cause connected with his work for claimant appealed to the Dale County Circuit Court alleging that he had not left his employment voluntarily but had been discharged without just cause. After the de novo hearing by the court sitting without a jury, there was a finding in favor of claimant and against the Department. The appeal is from that decision.

The facts show that claimant was an employee of Hayes International Corporation and had been for about two years. His job was assembly B aircraft mechanic.

Claimant asked for and received a leave of absence from his job on October 19, 1972 due to a heart attack. The heart attack did not occur while he was on the job. The leave lasted until June 6, 1973 when claimant returned to work at Hayes. He worked one full day and a portion of the second day, and then told his employer that he was still too sick to do his job.

During the discussion with Mr. Fowler, a representative of Hayes International, claimant asked if Hayes had any "light" work he could do. Claimant was asked by Mr. Fowler if his doctor had placed any restrictions on his activity. Claimant said his doctor had limited him, but he did not know to what extent. Fowler then directed claimant to have his doctor set out his restrictions or limitations so that he would know what type work claimant could physically do. Fowler testified that at this time he did not have any "light" work for claimant to do because he did not know what he was able to do.

During this conversation with claimant, Fowler called the State employment office and talked to Mr. Campbell. Fowler asked Campbell if he had any work that claimant could physically do. Campbell replied that he could not suggest possible work sources without knowing claimant's physical limitations. Campbell then suggested that claimant come by his office and get a certificate to be completed by claimant's doctor describing claimant's physical limitations.

He said this would help find work that claimant was physically able to do.

Before claimant left Mr. Fowler's office, he was given an additional thirty day leave of absence from his job as assembly B aircraft mechanic.

Claimant obtained a certificate from his doctor and took it to the State unemployment office where he apparently applied for unemployment compensation. He said that he had been informed by Mr. Fowler to do this. Thereafter he received three or four unemployment compensation checks and then received a written notice from Hayes International that his job had been terminated.

Claimant testified that the people at the unemployment office told him his benefits had been stopped because his job had terminated due to his quitting. Claimant also stated that he was qualified to do work as an automobile mechanic, warehouseman, and supply clerk at the time he talked to Mr. Fowler about being too sick to do the work of an assembly B aircraft mechanic. He said he was told at that time that no "light" work was available for him.

Claimant further said that he was on leave of absence at the time he filed his claim for unemployment compensation benefits.

■ Appellant argues in brief that the trial court erred in holding that claimant was eligible to receive unemployment compensation because claimant was not available for work; and that the court erred in saying that claimant had voluntarily left his employment for good cause because the health reasons given for leaving were not job related.

Claimant replies that he was eligible for benefits for the reason that notwithstanding his inability to perform as an assembly B aircraft mechanic, he was qualified to work as an auto mechanic, warehouseman, or supply clerk.

Title 26, Section 213(C), Code of Alabama 1940, as Recompiled 1958, provides in pertinent part as follows:

"An unemployed individual shall be eligible to receive benefits with respect to any week only if the director finds that —

.    .    .    .    .    .

"C. He is physically and mentally able to perform work of a character which he is qualified to perform by past experience or training, and he is available for such work either at a locality at which he earned wages for insured work during his base period or at a locality where it may reasonably be expected that such work may be available."

Title 26, Section 214, Code of Alabama 1940, as Recompiled 1958, provides in pertinent part as follows:

"An individual shall be disqualified for total or partial unemployment:

.    .    .    .    .    .

"B. If he has left his most recent bona fide work voluntarily without good cause connected with such work.

"(1) However he shall not be disqualified if he was forced to leave work because he was sick or disabled, notified his employer of the fact as soon as it was reasonably practicable so to do and returned to that employer and offered himself for work as soon as he was again able to work; provided, however, this exception shall not apply if the employer had an established leave-of-absence policy covering sickness or disability and (a) the individual fails to comply with same as soon as it is reasonably practicable so to do, or (b) upon the expiration of a leave of absence he shall fail to return to said employer and offer himself for work, if he shall then be able to work, or, if he is not then able to work, he fails to so notify his employer of that fact and request an extension of his said leave of absence as soon as it is reasonably practicable so to do.

.    .    .    .    .    .

"An established leave-of-absence policy shall be any leave-of-absence policy covering sickness and disability communicated to the employee by the customary means used by the employer for communicating with his employees.

"Provided, however, that nothing herein shall be construed or interpreted as authorizing the payment of benefits to any person during or for unemployment due to sickness or disability or during any period in which he is on a leave of absence granted in accordance with an established leave-of-absence policy the duration of which leave was set in accordance with his request or in accordance with a collective bargaining agreement; . . . .

"(2) When an individual is disqualified under this subsection—

"(a) He shall not be entitled to benefits for the week in which the disqualifying event occurs or for any week thereafter until (i) he has reentered insured employment . . . ."

The Court of Appeals of Alabama said in Southern Bell T. & T. Co. v. Department of Indus. Rel., 42 Ala.App. 351, 165 So.2d 128, that:

"It has been repeatedly held that Secs. 213 and 214 of Tit. 26, Code of Alabama, 1940, as amended, must be read and construed together for the purpose of determining one's eligibility for unemployment compensation. In Alabama Mills v. Carnley, 35 Ala.App. 46, 44 So.2d 622, 14 A.L.R.2d 1301, this court held the following:

"'We must seek the legislative intent from an act as a whole, and not from only a portion thereof. Marion County v. Middleton, 246 Ala. 464, 21 So.2d 312. While Section 213 deals with eligibility of an employee to receive benefits, and 214 deals with his qualifications therefor, the two sections are so interrelated that consideration of one necessitates a consideration of the other, and a me-

chanical application of the one without consideration of the other cannot lead to satisfactory conclusions.' "

The court also held in this case that an employee who has accepted a leave of absence from his employer for a stated period of time is ineligible for benefits during that period of time. By accepting the leave of absence, the employee still retains the employer-employee relationship and is thereby unavailable for other employment within the meaning of Section 213, *supra.*

In the instant case it is undisputed that claimant was placed on a thirty day leave of absence upon returning to his regular job and deciding that he was still too sick to do it. It is also undisputed that he applied for unemployment compensation benefits during the time he was on leave of absence, and it is reasonable to conclude that he received these benefits during the leave of absence and before his termination. Consequently, under the rule enunciated in *Southern Bell, supra,* claimant was not available for work during the period of the leave of absence.

█ Furthermore, claimant argues that he presented himself for work after his illness, that his employer had no work that he was qualified to do, and, therefore, he was eligible for unemployment compensation benefits.

It is true that claimant presented himself to his employer for work after an absence of less than one year, worked about a day and a half on his old job and informed his employer that he was still too sick to do his old job; that he then asked if there was any other work that he might do and told his employer that he was qualified to do work as an auto mechanic, warehouseman, or supply clerk. He testified that his doctor had placed restrictions on what he could physically do, but he could not remember those restrictions. Both the employer and the employment counselor informed him they could not help him locate work if they did not know what

work he was physically able to do. They suggested he obtain from his doctor a list of those restrictions and then come back to see them. The evidence fails to reveal that this was done prior to his termination.

The claimant did say he was qualified to do several jobs, but he failed to show that he was physically able to do these jobs, and, in the face of his testimony concerning the restrictions placed on his physical activity, it is reasonable to assume that even though he be qualified, he never did prove that he was physically able to do the work he said he was qualified to do. It is required that he be physically able to do the work as well as being qualified to do it. Title 26, Section 213(C), *supra*.

Consequently, we would conclude that claimant was ineligible to receive benefits for the reason that he failed to prove that he was physically able to do work for which he claimed to be qualified.

 The next question to be answered is whether claimant is disqualified from receiving benefits within the purview of Section 214, *supra*? He would not be if he voluntarily left his employment for good cause.

As previously mentioned, claimant was placed on thirty days leave of absence when he said he was too sick to continue on his old job. So we can assume that for thirty days after June 7, 1973 claimant was on leave of absence and was still an employee. The evidence does not show that he voluntarily left the employ of his employer prior to the expiration of this thirty day period. Further, the evidence fails to reveal when the claimant's employment was terminated or for what purpose, but it is undisputed that his employment was terminated by his employer.

Had his employment been terminated at the end of the thirty day period for failure of the claimant to report for work should he be able to work or for failure to request an extension of his leave of absence should he not be able to work, he would have been disqualified under the terms of Section 214, *supra*; but the evidence is silent as to the reason for the termination. All we are sure of, i. e., it is undisputed, is that claimant's employment was terminated by his employer. In this state of the evidence, it cannot be said that claimant voluntarily left his employment. We do believe, however, that it is safe to say that the evidence fails to reveal that claimant voluntarily left his employment; to the contrary, it is undisputed that he was terminated.

For the reasons above set out, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

WRIGHT, P. J., and HOLMES, J., concur.