Greta L. **GEIKEN**, Appellant,

v.

**LUTHERAN HOME FOR THE AGED ASSOCIATION and Employment Appeal Board, Appellees.**

No. 90–525.

Supreme Court of Iowa.

April 17, 1991.

224

Michael F. Harrington, Legal Services Corp. of Iowa, Cedar Rapids, for appellant.

Morris L. Eckhart of Milroy & Eckhart, Vinton, for appellee Lutheran Home.

William C. Whitten, for appellee Employment Appeal Bd.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, SNELL and ANDREASEN, JJ.

SCHULTZ, Justice.

In this appeal we must determine whether the Employment Appeal Board properly denied a claimant unemployment benefits on the ground that she was not able to work within the meaning of Iowa Code section 96.4(3).[1]  Claimant Greta L. Geiken was employed by Lutheran Home for the Aged Association (Lutheran Home) as a secretary.  In March 1989, claimant seriously broke her arm in a nonwork-related accident.  Lutheran Home granted claimant a medical leave of absence for eight weeks pursuant to its employment policy. Claimant offered to return to work on April 23.  At that time she was required to wear an ulnar wrist splint.  Lutheran Home refused claimant's offer on the basis that she could not fulfill the essential duties of her secretarial position.

1. All references to Iowa Code sections are to the    1989 Iowa Code.

Claimant promptly filed for unemployment benefits. Lutheran Home protested the claim. A claims deputy denied the claim, stating that Geiken was disqualified from receiving benefits because she was unable to perform work due to her injury. Claimant appealed and was granted an evidentiary hearing before an administrative law judge (A.L.J.). A portion of the law judge's findings are as follows:

The claimant is required to wear a brace and is unable to use the right hand without the brace. The claimant is right-handed. The claimant is unable to lift her fingers without the use of the brace, which lifts the fingers on the right hand by the use of rubber bands. The claimant, however, is able to move the fingers in a downward motion, which would be similar to that required in the operation of a typewriter.... By observing the claimant during the administrative hearing, it is concluded that the claimant can only operate the necessary office machinery minimally, and the operation of the office machinery has been reduced to such an extent that the claimant cannot be considered as a part of the labor market with respect to office work. The claimant possesses no other particular skills which would attach the claimant to the labor market.

As a part of its conclusions of law, the A.L.J. stated:

The law provides that an individual must be able to work to be eligible for benefits. This means that the individual must be physically able to work, not necessarily in the individual's customary occupation but able to work in some reasonably suitable, comparable, gainful, full-time endeavor, other than self-employment, which is generally available in the labor market in which the individual resides. Iowa Administrative Code section 345–4.22(1)b.

The A.L.J., concluding that claimant did not have the ability to work, denied benefits. The Employment Appeal Board (Board) adopted and incorporated by reference the decision of the A.L.J. with the exception of the addition of *Hedges v. Iowa Department of Job Service*, 368 N.W.2d 862 (Iowa App.1985), as authority for the A.L.J.'s decision. The A.L.J., the Board, and the district court on judicial review all denied Geiken's claim based on the same disqualification, that is, claimant's failure to "meet the availability requirements with respect to the ability to work."

■ A final decision of an agency includes findings of fact. Iowa Code § 17A.16(1). Judicial review by the district court and our appellate review of an agency's decision is limited to at law and not de novo review. *Roberts v. Iowa Dep't of Job Serv.*, 356 N.W.2d 218, 221 (Iowa 1984). Thus, we are bound by the Board's findings of fact if supported by substantial evidence. *Id.*

The rule governing eligibility for unemployment benefits states: "The claimant has the burden of proving that the claimant meets the basic eligibility conditions of section 96.4." Iowa Code § 96.6(2). One of these basic eligibility conditions is that the claimant "is able to work...." Iowa Code § 96.4(3). On appeal, claimant raises issues concerning the proper application of the "able to work" standards in section 96.4(3) and the assessment of court costs. We address these issues in turn.

I. *Able to work.* The parties do not dispute the standards applied in determining a claimant's ability to work. The applicable standards are further defined in agency rule 345–4.22(1)(b) as follows:

An individual must be physically and mentally able to work in some gainful employment, not necessarily in the individual's customary occupation, but which is engaged in by others as a means of livelihood.

. . . .

b. *Interpretation of ability to work.* The law provides that an individual must be able to work to be eligible for benefits. This means that the individual must be physically able to work, not necessarily in the individual's customary occupation, but able to work in some reasonably suitable, comparable, gainful, full-time endeavor, generally available in

the labor market in which the individual resides.

Iowa Code section 96.4(3) generally addresses the "able to work" requirement. The agency rule specifies that the ability to work is judged not only on the individual's customary occupation, but also on the availability of other suitable employment in the relevant labor market.

■ Claimant maintains that both the agency and district court failed to consider the availability of other employment in the labor market in which she resides. This contention has no merit. Even though claimant's doctor approved her return to work, claimant did not produce any evidence of other available jobs that she could perform within the labor market. Thus, claimant failed to meet the burden of proving her ability to work in a comparable job in the relevant labor market.

The A.L.J. found that claimant lacked the physical ability to return to her customary employment. The A.L.J. had the opportunity to closely observe claimant's physical abilities before reaching this conclusion. Before concluding that claimant did not "meet the availability requirements with respect to the ability to work," the A.L.J. also considered other suitable and comparable endeavors. We conclude that substantial evidence in the record supports the A.L.J.'s findings and conclusion that claimant's physical condition prevented her from doing either her customary work or other suitable work in the labor market in which she resides.

■ Claimant also argues that the Board, in determining her ability to return to employment and her eligibility for unemployment benefits, improperly applied the voluntary quit requirement of full recovery found in Iowa Code section 96.5 in disqualifying her from receiving unemployment benefits. As previously noted, the Board cited *Hedges v. Iowa Department of Job Service*, 368 N.W.2d 862 (Iowa App.1985), as additional authority for its decision. In *Hedges*, the court applied Iowa Code section 96.5(1)(d) to a case in which the employee appealed from a denial of benefits on the basis that she voluntarily quit her

job and held that the claimant must be fully recovered to receive unemployment benefits. *Id.* at 867. We agree that this case does not present a voluntary quit situation, thus making section 96.5(1)(d) inapplicable. Even though *Hedges* is not controlling, the full recovery standard it establishes merely adds additional support and authority to the A.L.J.'s conclusion that claimant was unable to work. Consequently, any error in applying the voluntary quit standards of section 96.5 to the eligibility conditions of section 96.4(3) was harmless.

In summary, the fact that claimant was willing to return to work and believed that she could minimally perform her job is not in question. She admitted, however, that she was only able to function at seventy percent capacity in operating machines. In addition, claimant admitted that she could not perform the writing required in her present job. She introduced no evidence of other employment in the area that she was physically able to perform. Therefore, we conclude that claimant failed to meet the burden of showing her ability to work. Furthermore, unemployment compensation under this chapter is not disability insurance and simply does not cover physically disabled persons during the periods when they are unemployable. Consequently, we find no error in either the Board's decision or the district court's ruling.

II. *Costs of judicial review.* The district court assessed court costs against claimant. Claimant emphasizes that Iowa Code section 96.15(2) provides as follows:

> An individual claiming benefits shall not be charged fees of any kind in any proceeding under this chapter by the division of job service or its representatives or by a court or an officer of the court. An individual claiming benefits in a proceeding before the division, an appeal tribunal, or a court may be represented by counsel or other duly authorized agent. . . .

She maintains this section prevents court costs being assessed against her. Appellees did not respond to this issue.

■ We must determine whether the term "fees" as used in section 96.15(2) in-

cludes court costs. The term "costs" has been defined as "fees and charges required by law to be paid to the courts or some of their officers." *Black's Law Dictionary* 312 (5th ed. 1979). This definition is reflected in both our statutes and case law. In examining Iowa Code chapter 625 governing court costs, we find reference to fees of witnesses, juries, reporters, attorneys, and assessments against the State. Iowa Code §§ 625.2, .8, .22, .29. These code sections expressly refer to these fees as court costs.

When faced with interpretation of a statute similar to Iowa's, the New Jersey supreme court also examined its statutes governing fees and costs and noted that throughout these statutes the terms "fees" and "costs" were not mutually exclusive. *Sweeney v. Board of Review*, 43 N.J. 535, 543, 206 A.2d 345, 349 (1965). The court concluded that "a payment for services made to the clerk of the court, to a witness, or to an attorney is a 'fee,' and if it is included among the items a party may recover from another, it is also a ... 'cost.'" *Id.* We agree with the New Jersey court's analysis.

Our case law also suggests that the term "fees" includes court costs. *See LaRue v. Burns*, 268 N.W.2d 639, 641 (Iowa 1978) (stating that costs includes sums ordinarily taxable as expenses incurred in an action as provided by statute); *State v. Rogers*, 251 N.W.2d 239, 242 (Iowa 1977) (referring to fees as costs); *Woodbury County v. Anderson*, 164 N.W.2d 129, 133 (Iowa 1969) (stating that court-approved fees and expenses under statute shall be taxed as part of costs).

The plain language of section 96.15(2) also lends support to the inclusion of court costs within the term "fees." This section expressly states that a claimant "shall not be charged fees of any kind." The modifying words "of any kind" indicates that the term "fees" should be interpreted broadly. In addition, section 96.15(2) expressly prohibits "a court or an officer of the court" from charging a claimant with "fees of any kind." We believe that this statutory language reveals the legislature's intent to prohibit assessing a claimant with court costs.

Other jurisdictions have reached contrary conclusions on the issue of whether court costs are fees. In holding that a prohibition against fees did not prohibit charging a claimant with court costs, the Kansas supreme court reasoned that fees are compensation for services while costs are expenses allowed. *Barnes v. Employment Sec. Bd.*, 210 Kan. 664, 680–81, 504 P.2d 591, 604–05 (1972); *accord Mississippi Employment Sec. Comm'n v. Wilks*, 251 Miss. 744, 746–48, 171 So.2d 157, 158–59 (1965). However, other courts have reasoned that the prohibition against charging a claimant with fees of any kind applies to court costs. *Washington v. Sumrall*, 457 So.2d 50, 53 (La.Ct.App.1984); *Schomaker v. Labor & Indus. Relations Comm'n*, 675 S.W.2d 450, 453 (Mo.Ct.App.1984); *Smith v. Adams*, 117 N.H. 152, 153–54, 370 A.2d 288, 289 (1977); *Sweeney*, 43 N.J. at 543–44, 206 A.2d at 349–50. We believe that this line of cases and the reasoning of the *Sweeney* court present better authority.

In summary, we believe that fees can be so intertwined with court costs that a distinction between court costs and fees is difficult. We hold that the prohibition in Iowa Code section 96.15(2) against charging a claimant "fees of any kind" encompasses court costs. Consequently, section 96.15(2) prohibits assessing an individual claiming unemployment benefits with court costs.

III. *Conclusion.* We affirm the district court's decision denying claimant unemployment benefits on the basis that she was not able to work within the meaning of Iowa Code section 96.4(3). We modify the district court judgment by removing the requirement that claimant pay court costs. We likewise do not assess costs on appeal against claimant.

AFFIRMED AS MODIFIED.